12

PHILLIP A. TALBERT
United States Attorney
JEFFREY J. LODGE
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, California 93721
Telephone: (559) 497-4000
Email: Jeffrey.lodge@usdoj.gov

Attorneys for the United States Department of Education

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>ANGELO MARTEL LOVE and<br>CHRISTINE MARIE LOVE,<br><br>                Debtor. | Case No. 19-20532-C-7<br>Chapter 7 |
| CHRISTINE MARIE LOVE,<br><br>                Plaintiff,<br>v.<br>FEDLOAN SERVICING et al.,<br>                Defendants. | Adv. Proceeding No. 21-02045-C<br><br>**UNITED STATES' MOTION FOR SUMMARY JUDGMENT**<br><br>DC No. USA-2<br><br>Date:   March 9, 2022<br>Time:  10:00 A.M.<br>Place:  Dept. C, Ctrm. 35, 6th Floor<br>          501 I Street, Sacramento CA<br>          Hon. Christopher M. Klein |

This is an action to determine the dischargeability of student loans from the United States Department of Education ("Education") under 11 U.S.C. § 523(a)(8). The Plaintiff, Christine Marie Love ("Love"), cannot carry her burden of proof to rebut the presumption that the student loans are not dischargeable. On February 8, 2019, Education established Love's flexible repayment plan (REPAYE), in the amount of $10 per month. On January 30, 2019, she filed chapter 7 bankruptcy, before her first payment was even in default. She has never been required to make any payment on the loan due

primarily to the CARES Act, which remains in effect. Although she has never made any payments, Love filed this case on June 28, 2021, to discharge her student loans. Her claims are too late and should be barred by the doctrine of laches. She cannot show a good faith effort to repay the student loans as required by the third prong of the "*Brunner*" test. Under these circumstances, Love is unable to show undue hardship to discharge her student loans under 11 U.S.C. § 523(a)(8) and there are no triable issues of fact; therefore, summary judgment should be granted in favor of the United States.

## FACTUAL BACKGROUND

On August 10, 2012, Love aka Christine M. Stack executed a Master Promissory Note William D. Ford Federal Direct Loan for her student loans.[1] Declaration of Cristin Bulman ("Bulman Decl."), ¶ 2. Between November 22, 2016, and March 27, 2018, Education disbursed student loans for her education at Ashford University totaling $27,135.00 (currently $28,405.34 with accrued interest). *Id*. Love withdrew from Ashford University effective April 09, 2018. *Id*. at ¶ 3.

On January 14, 2019, Love applied for a flexible repayment plan known as REPAYE. Bulman Decl., ¶ 3. Revised Pay As You Earn, or REPAYE, is an income-driven repayment plan that caps federal student loan payments at 10% of a borrower's discretionary income and forgives the remaining balance after 20 or 25 years of repayment. *Id*.; *see also* 34 CFR § 685.209; *see* https://studentaid.gov/app-static/images/idrPreview.pdf (last visited 2/1/2022). Income must be recertified annually. Bulman Decl., ¶ 3. Love's REPAYE was approved by Education on February 8, 2019, and her monthly payment was set at $10.00. *Id*.[2]

On January 30, 2019, Love filed a joint voluntary petition with her husband, Angelo, under chapter 7 with the assistance of counsel. Doc. 1.[3] Love had been separated from Angelo since April 2018 and she sought a divorce. AP Doc. 35. Love identified her residence as 4229 Cortright Way, North

---

[1] Prior to the loans at issue, Plaintiff had student loans totaling $24,667.00 for her education at Heald College, Loans (NSLDS 7-12) 2012, which were discharged though the Borrower Defense program. Bulman Decl., ¶ 2. These were considered discharged as of March 2, 2016. *Id*. They are not at issue here.

[2] The letter advised her: "Your new repayment plan is Pay As You Earn (PAYE) for the loans listed. We used your income documentation and family size to determine your new monthly payment of $10.00 which is first due on 03/26/2019….About 3 months prior to 03/01/2020, we will send you notification letting you know that you are due to recertify (complete a new application and provide updated income documentation). If you do not recertify or you no longer have a partial financial hardship (PFH), your payment amount will be $284.20."

[3] Docket references to "Doc." are to the main bankruptcy docket unless identified as the Adversary Proceeding docket as "AP Doc."

UNITED STATES' MOTION FOR SUMMARY JUDGMENT     2

Highlands, California. *See* Doc. 1, Schedule A. That remains her address of record.[4] *See* Doc. and AP Doc. She also identified a rental house located at 451 Armory Rd, Barstow, California. *See* Doc. 1, Schedule A. Love's Schedule I shows she had gross income of $3,390.09 from her job as Pharmacy Technician at Centente Corp. *See* Doc. 1, Schedule I.[5] Her take home pay was $2,834.87. *Id*. She also had Social Security income of $504[6] and total income of $3,338.87. *Id*. Love's Schedule J shows expenses for two children, ages 11 and 17, and total monthly expenses of $3,949. *See* Doc. 1, Schedule J. Her monthly net income was -$610.13. *Id*. Her Statement of Financial Affairs shows she had annual income of $49,123.00 in 2017 and $40,413.00 in 2018. *See* Doc. 1, SFA No. 1. Prior to filing, a creditor had repossessed her 2007 Corvette. *Id*. Love's attorney addressed her student loans and told her, "…there was no way [she] could get [her] loans discharged." AP Doc. 35.

On March 14, 2019, the Chapter 7 trustee identified assets in the case. *See* Doc. According to the docket, the deadline for objecting to discharge expired April 29, 2019. *Id.* Education filed proof of claim No. 13. Bulman Decl., ¶ 4. A discharge was granted on May 7, 2019. Doc. 25. After administering the assets, the Chapter 7 trustee made a disbursement to Education in the amount of $979.81. Doc. 35. He certified that the estate was fully administered on January 1, 2020. Doc. 37. The payment from the Trustee was credited to her account. Bulman Decl., ¶ 4. It was more than what Love owed for monthly payments to Education on her student loans at the time. *Id.*

On August 20, 2019, Love's divorce from Angelo became "final." AP Doc. 35. Love has two children whose father (not Angelo) is deceased. *Id*. Angelo was abusive and spent some time in jail. *Id.* Love receives no financial support from him. *Id*.

On January 10, 2020, Love filed adversary complaint, A.P. 20-2004, without the assistance of counsel seeking discharge of some student loans. Doc. 41. That case was never active. *See* Doc. and the Court closed the adversary proceeding on March 26, 2020. *Id.* The Court closed the main bankruptcy case on the same day. Doc. 42.

---

[4] According to documents provided in discovery, Love has a mortgage loan balance on this property of $197,096.46 as of 12/01/2021. According to Zillow, the property is currently valued at $412,000. *See* https://www.zillow.com/homedetails/4229-Cortright-Way-North-Highlands-CA-95660/25959385_zpid/ (last visited 2.4.2022)

[5] According to pay receipts provided in discovery, Love is still employed by Centene Corp. with annual income of $44,620.

[6] The Social Security income appears to be related to her son. It is unclear whether she continues to receive these payments so they are excluded from the analysis below.

UNITED STATES' MOTION FOR SUMMARY JUDGMENT — 3

On March 27, 2020, the President signed the CARES Act, which, among other things, provides broad relief in response to the coronavirus disease 2019 (COVID-19) for federal student loan borrowers whose loans are owned by Education. Bulman Decl., ¶ 5. Pub. L. No. 116-136 §§ 18001(b)(3), 18004(a), 134 Stat. 281, 564, 567-68 (2020); *see* 20 U.S.C. § 1091; 34 C.F.R. §§ 668.31-668.40. As a result, Love was not required to make any payments on her student loans for one year. Bulman Decl., ¶ 5.

On January 5, 2021, Education notified Love that, barring extension of the CARES Act, her annual recertification for her REPAYE was coming and, within 10 days of 02/25/2021, her monthly payment would increase to $284.20, first due on April 26, 2021. Bulman Decl., ¶ 6. CARES relief was extended through May 1, 2022. *See* Pub. L. 117-2. Because of the extension of the CARES Act, Love is not required to make any payments on her student loans through at least May 1, 2022. Bulman Decl., ¶ 6.

On June 28, 2021, Love filed the above referenced adversary proceeding without the assistance of counsel. BK Doc. 49; Doc. 1. There is no signature on the document. *Id*. The complaint is literally a form, "Form 128." *Id*. It is seven sentences. *Id*. The only material non-form allegation states, "Debtor is now divorced and a single parent with two children and is currently on disability." AP Doc. 1. Education moved to dismiss but, after the complaint was signed, the motion was denied. For relief, the complaint requests a discharge of Love's student loans pursuant to section 523(a)(8) of the Bankruptcy Code.

Love is now 40 years old. AP Doc. 35. Her two children are now 14 and 20. She is still employed as a pharmacy technician making $44,620 annually. *Id*.; Lodge Decl., ¶ 2. She is no longer on disability and has no medical conditions that affect her ability to work and earn. *Id*. Love has never been in default on her student loans to Education. Bulman Decl., ¶ 7. She filed bankruptcy before her first payment became due. *Id*. The disbursement of funds from the bankruptcy satisfied her payment requirements before the CARES Act became effective. *Id*. She claims she wants to go back to school to complete her education.

Discovery closed on January 31, 2022. AP Doc. 48. Love did not disclose any expert witnesses prior to the December 31, 2021, deadline. *See* AP Doc. Love seeks to discharge her student loans rather than recertify the REPAYE plan, which presumably would continue to have monthly payments of $10. ///

## LEGAL STANDARDS

**A.**　**<u>Summary Judgment</u>.**

Summary judgment is appropriate when "no genuine dispute as to any material fact" requires trial. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court must examine all the evidence in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If the moving party does not bear the burden of proof at trial, it may discharge the burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof. *Id*. at 323; *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102, 1106 (9th Cir. 2000).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party may not "rest on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 259. Instead, the non-moving party must go beyond the pleadings to designate specific facts showing the existence of genuine issues for trial. *Celotex*, 477 U.S. at 324-25.

A genuine issue exists only when a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-49. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87; see *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1459 (9th Cir. 1985) (the role of summary judgment in discrimination cases "is to enable the district courts to identify meritless suits and dispense with them short of trial."). "[T]he moving party is entitled to a judgment as a matter of law" when the nonmoving party fails to make a sufficient showing on an essential element of its case. *Celotex*, 477 U.S. at 323; *Nissan Fire & Marine*, 210 F.3d at 1102.

///

///

## B. Student Loans Are Presumed To Be Nondischargeable.

Generally, student loan obligations are presumed to be nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(8). Section 523(a)(8)(a) provides:

> A discharge under Section 727 . . ., does not discharge an individual debtor from any debt -- unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents, for (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend.

Although "undue hardship" is not defined in the Bankruptcy Code, the Ninth Circuit has recognized that "[t]he existence of the adjective 'undue' indicates that Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans . . ." *United Student Aid Funds v. Pena* (*In re Pena*), 155 F.3d 1108, 1111 (9th Cir. 1998) (quoting *In re Brunner*, 46 B.R. 752, 753 (S.D.N.Y. 1985), *aff'd, Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987)).

To determine if excepting student loans from discharge will create an undue hardship on a debtor, the Ninth Circuit has adopted the three-part test established by the Second Circuit in *Brunner*. *See Pena*, 155 F.3d at 1112; *Rifino v. United States* (*In re Rifino*), 245 F.3d 1083, 1086 (9th Cir. 2001). To obtain a discharge of a student loan obligation, the debtor must prove:

(1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. Under this test, the burden of proving undue hardship is on the debtor, and the debtor must prove all three elements before discharge can be granted. *Nys v. Educ. Credit Mgmt. Corp.* (*In re Nys*), 308 B.R. 436, 441–42 (9th Cir. BAP 2004), *aff'd*, 446 F.3d 938 (9th Cir. 2006). If the debtor fails to prove any one of the three prongs, then the debt will not be discharged. *Id.*; *Shells v. U.S. Dept. Education*, 530 B.R. 758 (Bankr. E.D. Cal. 2015).

///

///

## DISCUSSION

### A. Student Loan Background

Congress has recognized that student loans are not like other unsecured debt and should not be discharged in bankruptcy absent a showing of undue hardship. 11 U.S.C. § 523(a)(8). Student loans are public assistance, designed to assist citizens with their education goals, without regard to credit history. *See* Higher Education Act of 1965, Pub. L. No. 89-329, 79 Stat. 1219 (1965) (codified as amended at 20 U.S.C. § 1071); 34 C.F.R. parts 682 and 685. Student loans are often provided as part of a package of assistance including grants, subsidized loans, parent loans, and work study. *See* Federal Student Aid, https://studentloans.gov (providing information to the public) (last visited 2.4.2022). Financial counseling occurs at several stages of the lending process. 34 C.F.R. § 685.304. Borrowers have access to their account information on the internet. *See* https://studentaid.gov/fsa-id/sign-in/landing (last visited 2.4.2022).

Repayment terms are generous and flexible. Student loans have interest below market rate. *See* 20 U.S.C. § 1087e(b) (interest rates fixed to treasury bills and subject to a cap). They have many other special features. They can be consolidated. 34 C.F.R. § 685.220. Borrowers have flexible repayment options, including: Graduated Repayment Plan, IBR, ICR, and Income-Sensitive Repayment Plan. *Id*. at § 685.208.[7] Repayment plans can be changed at any time. Deferment and forbearance are two ways for borrowers to temporarily postpone or lower loan payments while in school, in the military, experiencing financial hardship, or in certain other situations. *Id*. at §§ 685.204, 685.205. Other possibilities include loan forgiveness, cancellation, and discharge. Student loans are discharged at the death of the borrower, meaning that the debt is not paid by the estate of the borrower and does not burden the borrower's dependents. *Id*. at § 685.212.

---

[7]   Income-contingent repayment plan (ICR). Under ICR, the monthly repayment amount is generally based on the total amount of the borrower's Direct Loans, family size, and adjusted gross income (including a spouse's income). *See* 34 C.F.R. § 685.208(k)(1). The amount of the payments cannot exceed 20 percent of a borrower's discretionary income computed on the basis of a set formula. Each year, Education recalculates a borrower's annual payment based on changes in the borrower's adjusted gross income, variable interest rate, income percentage factors in the annual notice, and poverty guidelines. A borrower makes payments until the loan is repaid in full or until the loan has been in repayment through the end of the ICR period. In general, the maximum repayment period is 25 years. 34 C.F.R. § 685.209(b)(1). At the end of the ICR period, Education cancels any unpaid portion of the loan. 34 C.F.R. § 685.209(b)(3). The ICP plan is available to a borrower based upon a showing of financial hardship.
   Income-based repayment plan (IBR). The IBR is similar to the ICR in that both cap the monthly payments at a percentage of discretionary income and Education forgives the remaining balance at the end of 25 years. 34 C.F.R. § 685.221.

It is critical to the operation of the student loan program that every borrower repay the American taxpayers for their financial support to the best of their ability. Congress' aim is to "tighten the gaps through which students could avoid loan repayment." See *Douglass v. Great Lakes Higher Educ. Servs. Corp.* (*In re Douglass*), 237 B.R. 652, 653 (Bankr. N.D. Ohio 1999) ("Historically, Congress has intentionally and progressively made it more difficult for student loan obligations to be discharged in bankruptcy cases."). Congress balanced the requirements of the student loan program, tax law, and bankruptcy to provide borrowers with options to pay an affordable amount toward their student loans, while leaving Education the ability to recover loans. This protects the student loan program for future generations.

### A.     Love's Complaint is Too Late.

Love waited two years after entry of her discharge to bring this action. BK Doc. 25, 49 (discharge date May 7, 2019, and date of filing AP is June 28, 2021). Her claims are barred by the doctrine of laches. *See generally Beaty v. Selinger (In re Beaty),* 306 F.3d 914, 921–22 (9th Cir. 2002). The circumstances causing a chapter 7 debtor's financial hardship must arise prior to the entry of the discharge. *In re Zygarewicz* 423 B.R. 909, 912-913 (Bankr. E.D. Cal. 2010). "To hold otherwise would mean that a bankruptcy discharge is a perpetual license to discharge student loans based on events that occur years after the bankruptcy discharge is granted." *Id.* Seeking relief so long after the case was discharged and closed raises practical issues of proof and the ability to effectuate proper relief. For example, she no longer has the same debts after discharge. Doc. 25. She knew or should have known she needed to file sooner as shown by her first student loan discharge case, AP 20-2004 filed January 10, 2020, which she allowed to be dismissed. Doc. 41.

### B.     Love Cannot Meet Her Burden to Show Undue Hardship.

Love cannot show, by a preponderance of the evidence, that she is entitled to a discharge under the *Brunner* test. The Ninth Circuit has established a presumption that a debtor's financial condition will improve, stating:

> We do not presume that an individual's present inability to make loan payments will continue indefinitely. Rather, we hold that the burden is on the debtor to provide the court with additional circumstances, i.e., "circumstances, beyond the mere current inability to pay, that show that the inability to pay is likely to persist for a significant portion of the

UNITED STATES' MOTION FOR SUMMARY JUDGMENT     8

> repayment period. The circumstances need be 'exceptional' only in the sense that they demonstrate insurmountable barriers to the debtors' financial recovery and ability to pay."…
>
> We will presume that the debtor's income will increase to a point where [the debtor] can make payments and maintain a minimal standard of living; however, the debtor may rebut that presumption with "additional circumstances" indicating that her income cannot reasonably be expected to increase and that her inability to make payments will likely persist throughout a substantial portion of the loan's repayment period.

*Nys*, 446 F.3d at 946 (citations omitted).

There are no disputed material facts. The undisputed facts show that Love cannot meet the burden of proof on any of the three prongs of the *Brunner* test. Love is 40 years old and works as a pharmacy technician making $48,000 annually. She claims to have medical issues, but she has failed to support these claims with any expert medical evidence and her medical issues do not stop her from working. She has two children, one of whom is nearly an adult. She is now divorced from her abusive husband. Her student loans became payable in April 2018 and she immediately obtained an REPAYE with monthly payments of $10. She filed bankruptcy within 60 days thereafter. Due to disbursement from the bankruptcy estate and the CARES Act, her loans are not in default and she has not had to pay anything on her REPAYE since it was established in February 2019. Under these circumstances, Love cannot carry her burden of proof, by a preponderance of the evidence, that she is entitled to an "undue hardship" discharge under the *Brunner* test.

1. **First Prong of the *Brunner* Test.**

Love cannot prove the first prong of the *Brunner* test, i.e., that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself if forced to repay her student loans. *Rifino*, 245 F.3d at 1088. To meet this requirement, Love will have to show more than simply tight finances. *Id*. (citation omitted). "In defining undue hardship, courts require more than temporary financial adversity, but typically stop short of utter hopelessness." *Id*. (citation omitted). The first prong of the *Brunner* test requires subtracting the debtor's average monthly expenses from her net monthly income. *Pena*, 155 F.3d at 1112-13. The method for calculating a debtor's average monthly expenses is a matter properly left to the discretion of the bankruptcy court. *Id*.

///

It is beyond dispute that Love's student loan payment was only $10. She had a job as a pharmacy technician making over $40,000 annually. This is far above the poverty guideline amount is the figure for your state and family size from the poverty guidelines published annually by the U.S. Department of Health and Human Services (HHS) which was $26,200 per year for a family unit of 4 in the contiguous United States for 2020. *See* https://aspe.hhs.gov/2020-poverty-guidelines#threshhold. A debtor cannot rely upon post-discharge circumstances to establish the first prong of the *Brunner* test. *See In re Zygarewicz*, 423 B.R. 909, 912-913 (E.D. Cal. 2010). Love cannot show that paying her student loans at $10 per month, or even the full $284, would prevent her from maintaining a minimal standard of living.

### 2. **Second Prong of the *Brunner* Test.**

Love is unable to prove the second prong of the *Brunner* test that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans. *Rifino*, 245 F.3d at 1088. This part of the test "is intended to effect 'the clear congressional intent exhibited in Section 523(a)(8), to make the discharge of student loans more difficult than that of other nonexcepted debt,'" *Id*. at 1088–89 (citations omitted). The longevity of a debtor's state of poverty, without more, is insufficient proof of the additional circumstances necessary to prove the second *Brunner* element. *See Spence v. Educ. Credit Mgmt. Corp.* (*In re Spence*), 541 F.3d 538, 544 (4th Cir. 2008) (quoting *Educ. Credit Mgmt. Corp. v. Frushour* (*In re Frushour*), 433 F.3d 393, 401 (4th Cir. 2005)). Love must take advantage of a reasonable opportunity to improve her financial situation; the law does not allow her to choose not to make such an improvement. *Nys*, 446 F.3d at 946; see *Rifino*, 245 F.3d at 1089.

Love has a reasonable opportunity to improve her financial condition. She is only 40 years old and her children are nearly adults. She has obtained a divorce from her abusive husband. She is employed as a pharmacy technician making $48,000 annually. She is eligible for, among other things, a flexible repayment plan for her student loans that will adjust her payments consistent with her income. Thus, she cannot show that her state of affairs, to the extent they are negative, is likely to persist for a significant portion of the repayment period of the student loans. Love cannot purposely choose to live a lifestyle that prevents her from repaying her student loans. *Nys*, 446 F.3d at 946. The Ninth Circuit has

established a presumption that a debtor's financial condition will improve. *Id*. Love cannot show additional circumstances that rebut the presumption that her income will increase. Also presumed is that her resultant financial recovery will afford her the ability to repay her student loans, the terms of which will reflect her income under a flexible repayment plan such as the REPAYE. *Id*.

### 3. Third Prong of the *Brunner* Test.

Finally, Love cannot show that she has made good faith efforts to repay the student loans. *Brunner*, 831 F.2d at 396. The underlying purpose of this requirement is to "forestall students . . . from abusing the bankruptcy system." *Pena*, 155 F.3d at 1111. Good faith is "measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." *Educ. Credit Mgmt. Corp. v. Mason* (*In re Mason*), 464 F.3d 878, 884 (9th Cir. 2006) (citation omitted). While not dispositive, courts will also consider a "debtor's effort—or lack thereof—to negotiate a repayment plan . . ." *Id*. (citation omitted); *Hedlund v. Educ. Res. Inst.* (*In re Hedlund*), 718 F.3d 848, 850, 851 (9th Cir. 2013); *Roth v. Educ. Credit Mgmt. Corp.* (*In re Roth*), 490 B.R. 908, (9th Cir. BAP 2013); *Pa. Higher Educ. Assistance Agency v. Birrane* (*In re Birrane*), 287 B.R. 490, 499 (9th Cir. BAP 2002). This determination will require the bankruptcy court to consider the evidence regarding the student loan program, and whether the debtor, in good faith, considered consolidation options. *See Nys*, 446 F.3d 938.

Love borrowed funds from Education in 2016-2018 and immediately qualified for a flexible repayment plan with monthly payments of $10. She filed bankruptcy before any payments were due. Due to the CARES Act she has never had to make any payments. She has made no effort to repay her student loans. In the Ninth Circuit, good faith requires significantly better efforts to pay than those exhibited by Love. *See Mason*, 464 F.3d 878 (finding lack of good faith, where debtor was unwilling to find a second part-time job and failed to diligently pursue ICR); *Birrane*, 287 B.R. 490 (finding lack of good faith, where debtor previously made some effort in negotiating repayment of her student debt but failed to pursue ICR option when it became available); compare *Roth*, 490 B.R. 908 (finding good faith, where debtor was 65 years old with a history of working multiple jobs and received TPD discharge for

some of her loans). Under these circumstances, Love cannot show that she made a good faith effort to repay her student loans.[8]

## CONCLUSION

On this basis, the United States requests that the Court grant summary judgment for the United States Department of Education and deny the discharge of Love's student loans.

Respectfully submitted,

Dated: February 7, 2022

PHILLIP A. TALBERT
Acting United States Attorney

By: /s/Jeffrey J. Lodge
JEFFREY J. LODGE
Assistant U.S. Attorney
Attorneys for the United States

---

[8] Because the Plaintiff cannot satisfy the third prong of the *Brunner* test, it does not matter whether she meets the first or second prongs. *Nys*, 308 B.R. at 441–42; s*ee e.g., Zygarewicz,* 423 B.R. at 914.